## John Eyler and Jonas Matthews, *vs.* Frederick Crabbs.

To sustain a decree in equity for the sale of lands to satisfy the vendor's lien, it must appear that the vendee was either insolvent or that the complainant had exhausted all his other remedies before he filed his bill.

Where no exceptions are taken to the averments of the bill in the court below, the omission of the complainant to aver that he had exhausted his remedies against the defendants, will not, since the act of 1832, ch. 302, prejudice his case before the appellate court.

Where a bill refers to and makes an exhibit of a former proceeding in equity, but the record of such proceeding is neither proved under the commission nor certified to under the *seal* of the clerk of the court, it is not evidence in the cause. The answers being silent in regard to it, this silence imposes on the complainant the obligation to establish the verity of the record.

A short copy of a *fi. fa.*, with the entry of *nulla bona* thereon, was found in the record, but it did not appear when or how it was introduced into the cause. HELD, that such a paper was not proof, though no objection was urged against it in the court below; to such a case the act of 1832, ch. 302, does not apply.

APPEAL from Frederick county court, sitting as a court of equity.

On the 11th day of April 1841, Frederick Crabbs and wife sold and conveyed to John Eyler the lands in controversy, for the consideration of $6000.

On the 13th day of October 1841, Crabbs and Eyler made a settlement of the balance of purchase money due on the land, on which day Eyler gave his two notes to Crabbs, one for $1000, the other for $1323.80, which notes recognise the lien due by Eyler to Crabbs.

Upon these notes suits were brought in Frederick county court by Crabbs, the plaintiff, on the 4th October 1843, and judgments recovered at February court 1845, as appears by short copies of said judgments filed in the case.

A bill was filed by Crabbs, on the 1st of January 1844, against Eyler, to enforce his equitable lien for the balance of unpaid purchase money, and the allegation made, that Eyler has kept out of the way to avoid the service of the writ issued

18     v.2.

on the notes held by Crabbs.    Eyler not appearing, an inter-
locutory decree was passed, and testimony taken in support
of the bill, and a decree was passed by Frederick county
court, as a court of equity, decreeing a sale of the said pro-
perty.

On the 10th of October 1843, John Eyler, for the consid-
eration of $3000, conveys to Jonas Matthews the land for-
merly sold and conveyed by Crabbs and wife to Eyler, upon
the following terms:—$600 on or before 1st April 1844;
$400 on or before 1st April 1845, bearing interest; $1000
on or before 1st April 1846; and $1000 on or before 1st
April 1847:—both notes bearing interest from the dates.

On the 24th February 1844, Eyler assigns to Matthews
both of the above mentioned notes of $1000, in trust, to pay
his, Eyler's, debts.

On the 13th February 1845, Crabbs files his bill against
Eyler and Matthews, to set aside the deed from Eyler to
Matthews, arresting his lien; and alleging the knowledge of
Matthews of the existence of the lien; and praying for spe-
cific and general relief.

Eyler answers, and denies the existence of the debt.

Matthews answers, and denies all knowledge of complain-
ant's lien.

Testimony is taken under the commission, and Frederick
county court, as a court of equity, on the 27th July 1850,
decree, that the balance of the purchase money should be
brought into court, or the property sold to pay the unpaid
purchase money; from which decree the defendants have
appealed.

The case was argued before LE GRAND, C. J., ECCLESTON
TUCK and MASON, J.

By *J. Nelson* for appellant, and *Ross* and *Palmer* for the
appellee.

*Nelson* for appellant.

The bill was filed in this case for the double purpose of

annulling the deed executed by John Eyler to Jonas Matthews, dated on the 10th day of October 1843, and of enforcing, as against the defendants, an alleged lien for the unpaid purchase money due upon a sale and conveyance of the property in said deed mentioned, by the complainant to John Eyler.

It sought to set aside the deed as fraudulent at common law, and under the statute of Elizabeth, having, as it was alleged, been made by John Eyler to delay, hinder and defraud his creditors. The decree passed by the court below, is based upon no such principle, and it is therefore unnecessary to consider the case in that point of view.

The decree is founded upon the other ground taken in the bill, and affirms the existence of the lien insisted upon, the knowledge of its existence by Matthews at the time he received his conveyance from Eyler, and that the complainant, by his proofs, has shown himself entitled to the interposition of a court of equity to enforce that lien against the property in the hands of Matthews.

It is proper to remark, that, in strictness, there is no competent evidence whatever in the record, out of the deeds and the acknowledgments contained in the answers. The commission returned in the cause is not even signed by the commissioner, and the case would therefore present clear error, but for the provisions of the act of 1832. How far these cure the defect indicated; (no exceptions having been filed in the court below,) is a question for the judgment of the court.

Assuming the testimony to be in, it cannot be denied that the existence of the claim for the unpaid purchase money, as against Eyler, is sufficiently shown; nor can it be confidently denied that Matthews, at the time of his purchase from Eyler, had notice of the claim. The evidence certainly strongly tends to show these facts.

But it is respectfully maintained, that no sufficient evidence is to be found in the record, to show that the complainant was entitled to the redress given to him by the decree.

1st. There is no proof of the insolvency of Eyler.

2nd. There is none that the remedies of the complainant, open to him at law as against Eyler, had been exhausted at the time of the filing of the bill.

That the one or other of these facts was necessary to be proved, is clear. *Pratt vs. Vanwyck's Exc'rs*, 6 *Gill and John.*, 496. *Richardson vs. Stillinger*, 12 *Gill and John.*, 477,

1st. In relation to the first inquiry,—the insolvency of Eyler at the time of the bill filed—the complainant examined but one witness, viz: Michael C. Adelsperger, who says: I did not know his pecuniary condition at that period.

2nd. As to the exhaustion of his remedies at law. There is no evidence whatever,

In the first place the bill contains no averment of any such fact, and in the absence of the allegation, the evidence, if offered, would not be admissible.

But in point of fact, no such evidence has been offered,

There is proof of the obtaining of judgments against Eyler, but none that *fi. fas.* or executions were ever issued upon such judgments.

It is true, that in the record there is found what purports to be the short copy of a judgment against Eyler, in Frederick county court, with an entry of *nulla bona* thereon, under the certificate of the clerk, but how it has found its way into the record does not appear. It is not exhibited with, or referred to by the complainants' bill, and is not returned with the commission, nor referred to by the commissioners, nor by any one of the interrogatories filed with the commission. It is therefore apparent, that it is some loose paper which has no proper place in the record.

If this be so, then it is submitted that it is clear, that the complainant has not, by his proceedings, placed himself in a position to challenge the interposition of the extraordinary powers of a court of chancery for his relief.

The appellants insist upon this whole record, that no such case has been made out by the proofs, as entitles the complainant to the relief decreed in the court below, and that said decree ought to be reversed.

*Ross* for appellee.

In this case no exception being taken below to the sufficiency of the averments in the bill, or to the evidence, no defect in the frame of the bill, (if any exists,) or in the testimony, can be urged in this court, under the act of 1832, chap. 302, sec. 5.

The case, then, before the court, presents a question of lien of unpaid purchase money, demanded by complainant of a purchaser, and the defence of that defendant on the ground of want of notice.

As to the fact of the existence of the lien, that is conclusively determined by the decree passed on the 6th day of January 1845, (and not appealed from by Eyler,) to be found in the record; of the evidence on the face of the notes executed by Eyler to Crabbs, to be found also in the record, and proved to exist by the testimony of Peter Green, in his answers to fourth interrogatory. By the testimony of Frederick Stultz, in his answers to fourth interrogatory; and of the testimony of Michael C. Adelsperger, in his answer to second interrogatory.

I assume the fact, therefore, as proved, that a debt of $2323.80, was due by Eyler to Crabbs, for unpaid purchase money, on the land which Eyler afterwards sold and conveyed to Matthews.

Is Matthews entitled to protection as a *bona fide* purchaser without notice?—the complainant contends that he had notice, actual or constructive.

The doctrine is too well settled in Maryland to require argument or authority, that the vendor's lien for unpaid purchase money extends to the vendee and all persons purchasing or holding under him, with notice of the lien. *Story's Equity*, *p.* 470, *sec.* 1225. *Pratt vs. Vanwyck's Exc'rs*, 6 *Gill and Johnson*, 495.

The principle of the liability of the purchaser, with notice, being established, the only question open for inquiry is the fact of notice.

Matthews, in his answer, admits, that before the 2nd Octo-

ber 1843, the date of his contract with Eyler, he knew of Eyler's embarrassments, and did not then know of complainant's lien: the notes, exhibits 3 and 4, in defendant's answer, were assigned by Eyler to defendant, to pay his, Eyler's, just debts.

Matthews, in his answer, states, that Eyler has always and at all times insisted, that he did not owe complainant one cent for the purchase money of land, &c.

This is an admission by the defendant, Matthews, that the subject of Crabbs' lien was matter of conversation between the parties, and although the existence of the debt and of the lien was denied, yet it is a necessary, irresistible inference, that Crabbs did claim a lien on this land for unpaid purchase money, which was known both to Eyler and Matthews, and is a circumstance from which notice must be inferred, and is sufficient to put Matthews on inquiry. Whatever is sufficient to put the party on inquiry, is a sufficient notice to destroy the effect of a plea of purchase *bona fide*, without notice.

The testimony in the record, however, shows that Matthews had notice. In the record is found a release executed by Frederick Crabbs, the complainant, to Peter Green, witnessed by Jonas Matthews, one of the defendants, and the purchasers from John Eyler, dated 9th February 1843, in which Crabbs' lien upon the land conveyed by him and wife to Eyler, dated April 11th, 1840, is distinctly recognised. This paper was procured by Matthews from Crabbs, and handed to Green. See Green's testimony as to this point.

Green also states in his answer to the fourth interrogatory, that Eyler and Matthews told him there were notes due from Eyler to Crabbs. He also states, that in February 1843, before the contract of 2nd October 1843, between Eyler and Crabbs, Matthews informed him he had gone down to pay Crabbs 500 or $550—for what purpose?

He also stated, before the release was executed, in the conversation with Matthews, that he would not pay the balance of purchase money he owed Eyler until he was better satisfied; that he understood Crabbs had some notes against Eyler

still, and that thereupon Matthews procured the release, marked exhibit A, No. 10.

In the testimony of M. C. Adelsperger, in answer to third interrogatory, he says, the surname of the attesting witness is like the handwriting of Matthews.

In the testimony of John Stultz it is proved, that Eyler said to Matthews, in the presence of the witness, that these notes were not liens, and that Mr. Palmer, in Matthews' presence, had told Eyler that the notes of Crabbs were not liens.

M. C. Adelsperger, in his answer to the fourth interrogatory, states the fact, that in 1842 or 1843, certainly not later than 1843, he informed Matthews of Crabbs' lien, and cautioned him about paying over the money; he also informed Matthews of Mr. Palmer's request, to settle with him and Matthews; stated that he never would have purchased the land, if Mr. Palmer had not informed him those notes of Crabbs were not liens.

The solicitor for appellant makes this further point: That notice, after the conveyance by Eyler to Matthews, of the claim of complainant, before the purchase money was paid by Matthews to Eyler, is equivalent to notice before the contract.

To sustain this position, I refer to 3rd *Sugden on Vendors*, page 312 *top-pag.*, *marginal-pag.* 448, 449; and the case of *Jones vs. Stanley*, 3rd *Equity Cases Abridged*, 685, *p.* 9; *Hoover vs. Donally*, 3rd *Henning and Munford*, page 316.

That Matthews, after this conveyance to him by Eyler, and before the payment of the two notes of $1000 each, executed by him to Eyler, had notice, is evident from the testimony in the record.

It appears from his own answer, and the exhibit to his answer, of the record, that on the 26th February 1844, these two notes, executed by Matthews to Eyler, for the purchase money, were assigned by Eyler to Matthews, in trust to pay his debts.

At that date, therefore, the notes were unpaid by Matthews to Eyler, and that if he had notice at that period, he is affect-

ed with notice of complainant's lien, to the extent of the two notes then unpaid.

It appears by the record, that suits were instituted by Crabbs against Eyler, on the notes given by Eyler to Crabbs, for the purchase money, on the 4th October 1843—six days before the date of Eyler's deed to Crabbs.

It also appears from the record, that on the first day of January 1844, prior to the deed from Eyler to Matthews being recorded, and prior to the assignment of the notes by Eyler to Matthews, that a bill had been filed by Frederick Crabbs against John Eyler, to enforce his equitable lien, for unpaid purchase money.

I contend that the institution of the suit at common law, and the filing of the bill in equity, by Crabbs, to enforce his lien, prior to the assignment by Eyler to Matthews of his, Matthew's note, was sufficient notice to affect the purchase money in his hands, unpaid, and brings the case within the principle of a purchase *pendente lite*. See *3rd Sugden on Vendors, top-pag.,* 321, &c.

But I contend that Matthews, prior to the assignment of the 26th February 1844, had actual notice of the existence of the complainant's lien.

See the testimony of Frederick Stultz, in answer to the fifth and sixth interrogatories, and the testimony of Michael C. Adelsperger, in answer to the fourth interrogatory, in which he states, that in 1842 or 1843, certainly not later than 1843, he communicated to Matthews the existence of the notes claimed by Crabbs as a lien.

It may be argued, that the notice must be by the person actually interested in the property, and that vague reports are not sufficient, and 3 *Sugden on Vendors, page* 315, *top-pag.,* and the cases there quoted, are authorities to sustain such position.

Even admitting such principle to be correct, we have evidence in this record, complying with the most rigid requirements.

In the release to Peter Green, executed by Crabbs the

claimant, obtained by defendant, the purchaser recites the deed, the purchase by Eyler, and the claim of unpaid purchase money; it is a release of part of the land from his lien, necessarily implying, that the lien on the residue, which was afterwards purchased by Matthews, was retained.

This answer, and all the testimony in the cause, shows, that he had notice; but that deceived or willingly deluded by the representations of Eyler, he purchased under an impression that the notes held by Crabbs were not liens, knowing the fact of the claims, but denying the legal effect. But admitting, for the sake of argument, that Matthews had no notice, either before his purchase or at the time his own notes were assigned to him by Eyler, in trust to pay Eyler's debts, the solicitor for complainant contends, that as trustee under the assignment, the funds in his hands as trustee, were applicacable to the discharge of the lien of complainant, with or without notice.

I assume the principle to be well settled, that the assignees in bankruptcy, or trustees under a voluntary assignment, for the benefit of creditors, are affected by the lien of the vendor, with or without notice.

For authorities to support this position, I refer to *Leading Cases in Equity*, page 241; *2nd Story's Equity*, sec. 1228, *p.* 480; *Shirley vs. Sugar Refining Company, 2nd Edwards*, 505, *and* 508; and *Repp and others, vs. Repp, Warfield and Fox, 12th Gill and Johnson*, page 341, &c.

These cases proceed upon the principle, that the equities existing against the vendee, attached to the land or the proceeds of the land, in the hands of the assignees or trustees, as they were privies in law and in fact.

The theory of the defence is, that as to the notes of $1000 each, assigned by Eyler to Matthews, on the 26th day of February 1844, for the payment of the debts of Eyler, that Matthews was a mere trustee, and disbursed the funds, in pursuance of the trust, without notice of complainant's lien.

I have shown how unfounded this defence is, and that he had full knowledge of the claim; and I have produced au-

19     v.2

thority to sustain the position, that the claim of Crabbs was the preferred lien; even if he had not knowledge of its existence,—he was bound to know it.

On this branch of the case his knowledge or ignorance is immaterial; and as between the trustee and the claimant of the fund, the controversy between Crabbs and Eyler, in its merits or demerits, could not be a subject of contention.

The decree passed on the 6th day of January 1845, is conclusive as between Crabbs the complainant, and Eyler the defendant. It settles the question of the lien of Crabbs, and not being appealed from, cannot now be controverted by Eyler, or Matthews his trustee, claiming under him.

Even admitting that the trustee, Matthews, ought to have notice of the claim of the complainant, the record shows the fact, that the bill to enforce the equitable lien of Crabbs, and the subpœna issued against Eyler, was issued by Frederick county court, as a court of equity, on the 1st January 1844, prior to the creation, by Eyler, of the trust in favor of his creditors, and prior to the appointment of Matthews as trustee, under the voluntary assignment made by Eyler to Matthews, on the 26th February 1844. Hence I contend, that even if notice were necessary, the creation of the trust was made *pendente lite ;* and that the trustee being the representative of the party creating the trust, was bound by the trust to execute it, in payment of the debts of Eyler, according to their priorities; and that the claim of complainant being a preferred lien, was entitled to priority, to the extent of assets over all other claims due by Eyler.

I therefore recapitulate the several points urged, and claim the affirmance of the decree upon the following points:

1st. That Matthews, at the date of his contract and deed, had notice of the existence of the equitable lien of complainant, and is not entitled to protection, as a *bona fide* purchaser without notice.

2nd. That Matthews had notice of the claim of complainant, prior to the assignment by Eyler of his two notes of $1000 each, on the 26th February 1844; and that to the ex-

tent of these notes, with interest, the claim of complainant must prevail.

3rd. That Matthews, under the assignment executed by Eyler, on the 26th February 1844, is a trustee, under a voluntary assignment; and that to the extent of the funds assigned, he is responsible to the complainant, with or without notice of complainant's lien; and that, under the proceedings in this cause, neither Eyler nor his trustee can controvert the lien of complainant, the same having been established by a former decree against Eyler, which decree is in full force.

*Palmer* for appellee.

The appellee submits the following points for the consideration of this court:

*1st Point.* It is a fixed principle in this State, that a vendor of real estate has an equitable lien on land sold and conveyed against the vendee for the purchase money due, and against all persons claiming under him, with notice; upon this plain principle, that in equity, the land sold and conveyed does not belong to the vendee until paid for.

*2nd Point.* This lien for unpaid purchase money, exists against a purchaser, from the vendee, until an actual conveyance is made, and all the purchase money paid; and notice before the actual payment of all the purchase money, is equivalent to notice before the contract of sale.

*3rd Point.* In this case, the equitable lien for the purchase money, as between Crabbs and Eyler, the vendor and vendee, has been fully settled and established by the decree of Frederick county court, as a court of equity, passed on the 6th day of January 1845; hence, the only question for this court to decide is, whether Matthews, the purchaser from Eyler, had notice of the claim for purchase money due to Crabbs, before he had paid the purchase money to Eyler, or before he received a conveyance for the land in question?

*4th Point.* The pendency of the said suits, both at law and equity, instituted by Crabbs against Eyler for said purchase money, was constructive notice that the purchase money in

question was due, and Matthews was legally bound by such constructive notice of the existence of said lien, and he is bound to pay it.

*5th Point.* In all cases where property is assigned to trustees for the payment of the debts of the assignor, and there be liens on the property at the time of the assignment, the trustees would, in equity, be bound first, to pay and satisfy all such liens as preferred claims. Hence, it follows, that even if the assignment of the two $1000 single bills, to Matthews by Eyler, made on the 26th day of February 1844, for the payment of Eyler's debts, had been a *bona fide* and an honest transaction, the appellee would be entitled to the whole of his claim, under the facts and circumstances of the case, as a preferred claim, &c.

*6th Point.* The records of the case of Crabbs vs. Eyler, and the decision of the court therein, which constitutes a part of the proceedings in this case, and the copies of the judgments, writs of *fieri facias* and the return of *nulla bona* thereon, are, it is respectfully submitted, conclusive evidence to prove that Crabbs had, before the filing the bill in this case, exhausted all legal remedies against Eyler for the purchase money in question, and that the decree of the county court is correct.

*7th Point.* The complainant, Crabbs, in this case, had no legal remedies against Matthews to exhaust before he could proceed in equity against him, as trustee, he holding property and money in his hands, which in equity Crabbs is entitled to claim, to pay the balance of his purchase money, &c. Therefore, Crabbs having no legal remedies against Matthews to exhaust, in truth having no legal remedies against him at all, the doctrine established by the cases of *Pratt vs. Vanwyck's Executors,* 6 *Gill and Johnson,* 496, and *Richardson vs. Stillinger,* 12 *Gill and Johnson* 477, can have no application to the case now under consideration, even if that doctrine could be sustained upon principle.

This case is one, which, under the peculiar circumstances attending it, calls for relief. There has been a manifest attempt on the part of Eyler and Matthews to cheat and defraud

Crabbs out of the balance of the purchase money due him for the land in question. The object of Eyler has been, from the beginning of this transaction, to embarrass Crabbs by conveying the land and premises in question to Matthews, and to hinder and delay him in enforcing his equitable lien for said purchase money. Before this bill was filed against Matthews, to enforce the equitable lien for purchase money, upon the principle that Matthews held said land as a trustee, Crabbs had exhausted all his legal remedies for said purchase money against Eyler, and had obtained a decree in a court of equity for the sale of said land to pay the balance of the purchase money due him, which is fully shown by the records in this case. The charges in the bill make a clear case of trust against Matthews, and the proof in the record fully sustains the charges in the bill. Matthews admits in his answer, that he held and received said property in trust for the benefit of the creditors of Eyler, and our claim being a charge and lien upon the land and premises, must first be paid as a preferred claim according to all the well settled rules in equity. But Matthews is to be treated as a trustee, by operation of law, independent of his admissions, having obtained the land in question with both legal and constructive notice of the existence of the lien for purchase money due Crabbs. That a balance of the purchase money for said land was due Crabbs, at the time of the sale and conveyance to Matthews, is proved beyond controversy; and it is a fixed principle in this State, that the vendor has a lien on land sold, &c., against the vendee, and against all persons claiming under him with notice that purchase money is due. *Mackreth vs. Symmons*, 15 *Vesey, Rep.*, 329. 4 *Kent's Com.*, 153, *and cases. Magruder vs. Peters*, 11 *Gill and Johnson. Rep.*, 217. *Repp vs. Warfield and Fox*, 12 *Gill and Johnson*, 341.

The principle upon which this doctrine of equitable lien for purchase money is based, is, that in equity, the land sold and conveyed does not belong to the vendee until paid for. 2 *Story's Equity*, secs. 1219, 1220. 15 *Vesey's Rep.*, 340, 347, 349. *Winter vs. Lord Anson*, 1 *Simmons and Stewart*

434. The vendee holds the lands in trust for the vendor until all the purchase money is paid. 4 *Kent's Com.*, 152, and cases referred to. And where the vendee has sold the estate to a *bona fide* purchaser, without notice, if the purchase money has not been paid, the original vendor may proceed against the estate for his lien, or against the purchase money in the hands of such purchaser for satisfaction, for in such case the latter, not having paid his money, takes the estate *cum onere*, at least to the extent of the unpaid purchase money. Where trust money can be traced, it shall, in equity, be applied to the purposes of the trust; and in this case, the money in the hands of Matthews to the payment of the purchase money due Crabbs, as Matthews had notice of the existence of his lien before he had paid any part of the purchase money to Eyler, if he has ever paid any. *Lench vs. Lench,* 10 *Ves. Rep.*, 511. *Ex-parte Morgan,* 12 *Ves.*, 6. *Jewett vs. Palmer,* 7 *Johns Ch. R.*, 67. *Story vs. Lord Windsor,* 2 *Atkins,* 630. *Hardingham vs. Nicholls,* 3 *Atkins,* 304. *Harrison vs. South-cote,* 1 *Atkins,* 538. *Wigg vs. Wigg,* 1 *Atkins,* 382. *Dos-well vs. Buchanan,* 3 *Leigh's R.*, 384. *Murray vs. Ballou,* 1 *Johnson, ch. Rep.*, 566. The cases cited clearly show, that notice to Matthews of the existence of Crabb's lien, before he had paid the purchase money to Eyler, is, for the purpose of sustaining the decree in this case, equivalent to notice before the contract of sale of the land in question to Matthews.

In this case the equitable lien for purchase money as between Crabbs and Eyler, the original vendor and vendee, has been fully settled and established by the decree of the Frederick county court, as a court of equity, passed on the 6th day of January 1845, and also that Crabbs had, before the filing the bill in this case, exhausted all his legal remedies against Eyler for the purchase money in question, as is fully and conclusively shown by the record of the case of *Crabbs vs. Eyler,* exhibited in this case, and made a part of the bill of complaint, as if inserted in words and figures. The complainant, Crabbs, had no legal claims against Matthews to enforce or to exhaust before filing his bill to make Matthews accountable

as an equitable trustee. Matthews holds the land in question, or the money which he contracted to pay for the same as a trustee, and is answerable as such trustee, and in no other way. The question of notice to Matthews before he paid any part of the purchase money for said land to Eyler, is a question of fact to be decided by the court from the evidence in the record, all of which is to be considered by this court, as no part of it was objected to in the court below, as inad- missible, and the evidence being so clear and conclusive as to the question of notice, I shall not trouble the court with a single comment. Matthews, it is respectfully submitted, had both actual and constructive notice of the existence of Crabbs' lien to subject himself as trustee in the case, and to sustain the decree of the county court. See the authorities as to con- structive notice: 1 *Story's Equity*, sec. 405, 406, 407. *Mur- ray vs. Ballou*, 1 *Johnson, Ch. Rep.*, 566. 3 *Atkins*, 175. 11 *Vesey Rep.*, 194. 2 *Ves. and Beam*, 205. *Story's Equi- ty Pleadings*, secs. 156, 351. It was unnecessary to have made Eyler a party in this case to have subjected Matthews as trustee for the benefit of Eyler's creditors; for he had parted with all his interest in the property, and the lien for purchase money had been decided against him, and that the land in question should be sold to pay the balance of purchase money due, &c.

It is a fraud for a person to purchase land with notice of an equitable title of any other person to the same property, and in all such cases the fraudulent purchaser with notice, will, in equity, be held as a trustee for the benefit of the persons whose rights he has thus sought to defraud or defeat. 2 *Fonbl. Equity, B, ch. 6, sec. 2. Murray vs. Ballou*, 1 *John. Ch. R.*, 566. *Murray vs. Finster*, 2 *John. Ch. Rep.*, 158. *Maundrell vs. Maundrell*, 10 *Ves. Rep., (by Sumner,)* 260, 261, 270.

The learned counsel for the appellant in this case, has sub- mitted to the court two questions in opposition to the affirm- ance of the decree of the court below; first, that the commis- sion to take testimony was not properly returned, not being

signed by the commissioner. It was returned and signed by William M. Merrick, Esq., who actually executed the commission, by virtue of a written agreement. Mr. Luckett, to whom the commission issued, was not present when the testimony was taken, hence did not sign the return. Secondly, it is contended by the appellant's counsel, that there is no proof in the record of the insolvency of Eyler before the filing of the bill in this case; and that none of the remedies of Crabbs at law against Eyler had been exhausted at the time of filing the bill in this case, and upon those two propositions he seemed to rest his case, admitting, almost in express terms, that Matthews, at the time of the purchase from Eyler, had notice of the claim in question for purchase money. He says, "the evidence strongly tends to show these facts." I am inclined to the belief, that the court will find, on a careful examination of the record, that the fact of notice is conclusively proved. And I would respectfully ask this honorable court, what more the complainant could have done to exhaust his legal remedy against Eyler than he has done? What more could he have done before filing the bill in this case than he did do? He instituted suits on the notes given for the purchase money in a court of law, obtained judgments thereon, procured *fieri facias* to be issued on said judgments, which were returned by the sheriff *nulla bona;* copies of said judgments and writs of *fieri facias*, with the return of *nulla bona* thereon, were offered in evidence before the commissioner who took the testimony in this case, and were returned to the court below, with the commission, as part of the evidence, which are now to be found in the record with the evidence, and were acted upon by the court below as a part of the evidence in deciding the case, without having been objected to as inadmissible, and it is now too late, (since the act of 1832 ch. 302, sec. 5,) to make any objection to the admissibility of said evidence. It is not for this court to decide whether the judgments, writs of *fieri facias*, &c., were legally admissible and proper evidence in the court below, they are in the record as evidence, and doubtless were acted upon by the county

court, and this court must act upon the record as they find it transmitted to them, with all the evidence which was before the county court. The complainant did more than obtain judgments at law, &c., to enforce the payment of his equitable lien for purchase money. He filed his bill of complaint in the Frederick county court, as a court of equity, against Eyler, charging that Eyler was utterly insolvent, and that said money could not be made without the aid of a court of equity; and the said county court, after a careful examination of the case, ordered, adjudged and decreed, that the land in question be sold to pay said purchase money; from which decree there was no appeal, and it now stands in full force against Eyler, and is decisive, taking it in connection with the said judgments at law, the *fieri facias* thereon, and return of *nulla bona*, of the questions involved in this case. It is respectfully submitted, that the complainant in this case, before he filed this bill, did everything that he was or could be required to do to entitle him to a decree in this case against Matthews as the trustee of Eyler. It will be found on examination, that the cases of *Pratt vs. Vanwyck's Executors*, 6 *Gill and John.*, 496; *Richardson vs. Stillinger*, 12 *Gill and Johnson*, 477, are not applicable to the case under consideration. The appellee, therefore, in this case, insists, that taking the whole record together, a clear case for the relief prayed is made out by the proof, and that the decree of the court below is, in all its parts, correct, and ought to be affirmed by this court.

LE GRAND, C. J., delivered the opinion of the court.

The view which we have taken of this case, *as presented by the record*, dispenses with the necessity of considering some of the points made in the argument of counsel.

The bill was filed for the double purpose of annulling the deed executed by Eyler to Matthews, and of enforcing, as against the defendants, an alleged lien for the unpaid purchase money due upon a sale and conveyance of the property mentioned in the deed from Eyler to Matthews.

The decree pronounced by the county court is founded en-

20    v.2

tirely on the ground, that the vendor's lien has been made out against both of the defendants.

To sustain such a decree, it is necessary it should appear, that either Eyler was insolvent or that the complainant had exhausted all his other remedies before he filed his bill. *Pratt vs. Vanwyck's Excr's,* 6 *Gill and John.,* 496, and *Richardson vs. Stillinger,* 12 *Gill and John.,* 477, are sufficient authority for this doctrine.

The question then is, has the complainant established either of these propositions? We think not. The complainant does not aver that he had exhausted his remedies against Eyler before he filed his bill against both of the defendants; but this omission, since the act of 1832, would not prejudice his case before this court, provided there was proof to show the fact, no exception having been taken to the sufficiency of the averments of the bill in the court below.

But as the case is *presented by the record,* there is no proof of either of the essentials to the sustentation of this proceeding. It is true, the bill refers to and makes an exhibit of a former proceeding in equity against Eyler, but the record of that suit is not proven under the commission, nor is it certified to under the *seal* of the clerk of the court. The answers of the defendants are silent in regard to it, and this silence imposed on the complainant the obligation to establish the verity of the record, and this he has failed to do. *Warfield vs. Gambrill,* 1 *Gill and John.,* 503.

The proof of the insolvency of Eyler, apart from the proceedings in equity against him, it is contended, is to be discovered in the short copy of *fi. fas.,* with entry of *nulla bona* thereon, to be found in the record. It does not appear when or how these papers were introduced into the case. But it is supposed that as there was no objection urged to this proof, it is too late now to interpose any. We think not; to such a case the act of 1832 does not apply. *Stockett vs. Jones,* 10 *G. & J.,* 276.

The case, without affirming or reversing the decree of the county court, will be remanded for further proceedings; but

as the act of 1832 makes it the duty of this court to express its opinion on the merits of the cause, and to give directions to the court to which the record shall be remanded, we state, that had the record in the former proceeding been duly verified, or had the evidence of returns of *nulla bona* to the writ of *fieri facias* been properly introduced into the case, we should have felt bound to have affirmed the decree of the county court, there having been no exception taken to the insufficiency of the averments of the bill.

Entertaining these views, we deem it unnecessary to advert to the other questions raised in the cause, satisfied that if the deficiences alluded to be supplied, that the complainant below will secure the object of his proceeding.

*Cause remanded under act of* 1832,
*chap.* 302, *for further proceedings.*